UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RONALD MIDDLETON and BENSON                     Case No. 14 CV 7389
TAYLOR A.K.A. TAYLOR J. BENSON,
                              Plaintiffs,        **COMPLAINT**

          -against-                              JURY DEMAND

THE CITY OF NEW YORK, P.O. ERIN
FILPO [SHIELD # 14894], SERGEANT
DAVID LEONARDI and JOHN DOE AND
JANE DOE #1-8 (the names John and Jane
Doe being fictitious, as the true names are
presently unknown),
                              Defendants.
------------------------------------------------------------------X


Plaintiffs, RONALD MIDDLETON and BENSON TAYLOR, by their attorney, The Law
Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New
York, P.O. Erin Filpo [Shield # 14894], Sergeant David Leonardi and John Doe and Jane
Doe #1-8 (collectively, "defendants"), respectfully allege as follows:

1.      This is an action at law to redress the deprivation of rights secured to the
        plaintiffs under color of statute, ordinance, regulation, custom, and/or to
        redress the deprivation of rights, privileges, and immunities secured to the
        plaintiffs by the Fourth, Fifth, Sixth and Fourteenth Amendments to the
        Constitution of the United States, and by Title 42 U.S.C. § 1983, and arising
        under the law and statutes of the City and State of New York.

                                    JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28
        U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the
        Fourth, Fifth, Sixth and Fourteenth Amendments to the United States
        Constitution.

3.      As the deprivation of rights complained of herein occurred within the
        Eastern District of New York, venue is proper in this district pursuant to 28
        U.S.C. §1391 (b) and (c).

THE PARTIES

4.      Plaintiffs are and were at all times material herein residents of the United States and the State of New York.

5.      At all relevant times, defendants P.O. Erin Filpo [Shield # 14894], Sergeant David Leonardi, John Doe and Jane Doe #1-8 (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

6.      At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7.      At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8.      Plaintiffs are suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.      On or about April 16, 2013, at approximately 8:30 p.m., defendant officers, acting in concert, arrested plaintiffs without cause at or within the vicinity of 495 Putnam Avenue, Brooklyn, New York, and levied approximately nine (9) different charges against each plaintiff including PL 220.16(1) 'Criminal possession of a controlled substance in the third degree.'

10.     Plaintiffs, however, did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

11.     At the time of the arrest, plaintiffs were at the aforementioned location, which was a sports bar at the time, socializing when defendant officers

suddenly bum-rushed the location and forcibly grabbed and tightly handcuffed the plaintiffs, the owner of the bar and the other patrons of the bar.

12. Following the arrest, defendant officers promptly removed the plaintiffs from the location, placed them in a police van and transported the plaintiffs to NYPD-79th Precinct.

13. Upon information and belief, defendant officers eventually returned to the aforementioned location and performed a search of the bar and its adjoining rooms including an office space maintained by the owner of the bar.

14. After detaining the plaintiffs for a lengthy period of time at the NYPD-79th Precinct, plaintiffs were transported to the Central Booking to await arraignment.

15. While plaintiffs were awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

16. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiffs committed the charged crime/offense(s).

17. Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against the plaintiffs.

18. Upon arraignment, plaintiffs were released on their own recognizance but were required to return to the criminal court to defend the false charge(s) levied against each plaintiff.

19. Eventually, following an independent investigation, the prosecutors determined that there was no evidence of any crime committed by either plaintiff.

20. On December 6, 2013, the charge(s) levied against Mr. Middleton was summarily dismissed upon motion by the prosecutors.

21. Shortly thereafter, on April 3, 2014, the charge(s) levied against Mr. Taylor was summarily dismissed upon motion by the prosecutors.

22. That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or station house knew and was

3

fully aware that the plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

23.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

24.     As a result of the aforesaid actions by the defendants, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

25.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 24 of this complaint as though fully set forth herein.

26.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, failure to intervene, unlawful stop and frisk, unreasonable detention, unlawful entry, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

27.     Such conduct violated plaintiffs' rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

28.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

29.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 28 of this complaint as though fully set forth herein.

30.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers

4

concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

31.     Additionally, defendant City of New York, acting through District Attorney Kenneth P. Thompson and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the expected standard of practice for candor with the court.

32.     Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are black, on the pretext that they were involved in narcotics, drugs, guns, robberies and/or other illicit activities.

33.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

34.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and

that it had settled at least one of the lawsuits brought against it concerning racial profiling.

35. In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

36. Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

37. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

38. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

39. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective

"you still have a number [of arrests] to reach while you are in the narcotics division."

40.    Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

41.    Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

42.    That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

43.    That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

44.    Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that

[any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

45.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

46.     Upon information and belief, many of the named individual defendants have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits.

47.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-79th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

48.     That most of the arrests and charges made by officers assigned to the NYPD-79th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

49.     That defendant City of New York has settled numerous lawsuits brought in this district and in the Southern District of New York against several officers assigned to the NYPD-79th Precinct concerning similar arrests and charges

as those described herein. *See*, *e.g.*, *Shamarlon Villafana v. City of New York* (13 CV 3591); *Anderson Charles v. City of New York* (13 CV 2546); *Latisha Thomas v. City of New York* (12 CV 5061); *Cymantha Holly v. City of New York* (12 CV 4323); *Nicholls Olwyn v. City of New York* (08 CV 2098).

50. That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

51. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

52. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

53. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 52 of this complaint as though fully set forth herein.

54. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving them of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process),

Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

55.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

56.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

57.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

FOURTH CAUSE OF ACTION: OTHER NEW YORK TORTS

58.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 57 of this complaint as though fully set forth herein.

59.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, assault and battery, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, breach of special duty or relationship, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, negligent and intentional emotional distress and negligent hiring and retention of defendant officers.

60.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.     For costs of suit herein, including plaintiffs' reasonable attorney's fees; and;

d.     For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
       December 19, 2014

UGO UZOH, P.C.

/s/

_____

By:     Ugochukwu Uzoh (UU-9076)
        Attorney for the Plaintiffs
        304 Livingston Street, Suite 2R
        Brooklyn, N.Y. 11217
        Tel. No: (718) 874-6045
        Fax No: (718) 576-2685
        Email: u.ugochukwu@yahoo.com